IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

RAFAEL ROSALES,

    Plaintiff,

v.　　　　　　　　　　　　　　　　　　　Case No.: 19-cv-128

CITY OF MILWAUKEE,
Former Milwaukee Police Officer
MICHAEL GASSER, Milwaukee
Police Officers KIM LASTRILLA,
JAMES FILSINGER, ADAM STAHL,
MICHAEL SCHWANDT, DAMON WILCOX,
MATTHEW RITTNER, THOMAS MARCUS,
and JOSEPH SCHEURING,

    Defendants.

## COMPLAINT

Plaintiff RAFAEL ROSALES, by and through his attorneys, the PEOPLE'S LAW OFFICE and THE SHELLOW GROUP, for their complaint against Defendants CITY OF MILWAUKEE, former Milwaukee Police Officer MICHAEL GASSER, Milwaukee Police Officers KIM LASTRILLA, JAMES FILSINGER, ADAM STAHL, MICHAEL SCHWANDT, DAMON WILCOX, MATTHEW RITTNER, THOMAS MARCUS, and JOSEPH SCHEURING, hereby alleges as follows:

### INTRODUCTION

1.    After surrendering to police following a car chase, Plaintiff Rafael Rosales was brutally attacked by former Milwaukee Police Officer Michael Gasser, who kicked Plaintiff in the face while Plaintiff was subdued face down on the ground, handcuffed behind his back,

completely vulnerable and unable to protect or defend himself, causing Plaintiff serious physical injuries. Numerous Milwaukee Police Officers were standing nearby, yet did nothing to stop the attack, and instead congratulated and joked with Gasser afterward, and then covered up for Gasser by writing false reports of the incident and lying to investigators, all in accordance with the Milwaukee Police Department's interrelated practices and customs of failing to properly monitor, control and discipline its officers and the attendant police code of silence.

2. Plaintiff files this civil rights action to bring the Defendants' misconduct to light, to hold the Defendants' accountable for their actions, and to seek justice for the injuries he suffered.

## JURISDICTION AND VENUE

3. This action is brought pursuant to 42 U.S.C. § 1983 to redress the deprivation under color of law of Plaintiff's rights as secured by the United States Constitution.

4. This Court has jurisdiction over federal claims pursuant to 28 U.S.C. § 1331 and state law claims pursuant to 28 U.S.C. § 1367.

5. Venue is proper under 28 U.S.C. § 1391(b). Defendant City of Milwaukee is a municipal corporation located within this judicial district. Additionally, the events giving rise to the claims asserted herein occurred within this judicial district.

## PARTIES

6. Plaintiff Rafael Rosales is a 26-year old Latino man. He is currently incarcerated at Fox Lake Correctional Institution in Fox Lake, Wisconsin.

7. Defendant City of Milwaukee is a Wisconsin municipal corporation and is required to pay any tort judgment for damages for which its employees are liable for acts within the scope of their employment.

8. Defendants Michael Gasser, Kim Lastrilla, James Filsinger, Adam Stahl, Michael Schwandt, Damon Wilcox, Matthew Rittner, Thomas Marcus, and Joseph Scheuring, at all times relevant to this action, were Milwaukee Police Department officers employed by the City of Milwaukee. They are being sued in their individual capacity.

9. These Defendants, at all times relevant to this action, were acting under color of law, were carrying out their duties as MPD officers, and were acting within the scope of their employment with the City of Milwaukee.

## FACTUAL ALLEGATIONS

### The Incident

10. On August 4, 2017, Milwaukee Police Department officers stopped a vehicle in which Plaintiff was a passenger. After the driver and another passenger exited the car, Plaintiff moved into the driver's seat and drove away.

11. Numerous officers from the Milwaukee Police Department, including Defendants Lastrilla, Filsinger, Stahl, Schwandt, Rittner, Marcus, and Scheuring, and several officers from the Greenfield Police Department, pursued Plaintiff in their squad cars for approximately 20 minutes, until the chase ended when the police brought Plaintiff's vehicle to a stop.

12. Defendants Gasser and Wilcox were handling another call when the chase began and despite the fact that numerous other officers were already involved in the pursuit, Gasser and Wilcox abandoned their call and joined in the chase, and they did so without calling in to dispatch to announce their involvement.

13. After the chase ended, Plaintiff put his hands in the air and surrendered to the police.

3

14. Several officers approached the car Plaintiff was driving, Defendant Filsinger broke the front passenger window, then several officers pulled Plaintiff out of the window, placed him face down on the ground, and handcuffed him behind his back.

15. Plaintiff complied with all police orders after surrendering.

16. As Plaintiff was lying prone on the ground, completely passive and subdued, with his hands handcuffed behind his back, Defendant Gasser walked up to Plaintiff and kicked him one or more times in the face.

17. The force of Defendant Gasser's attack broke Plaintiff's nose. Plaintiff yelled out in pain, "why did you kick me, there's no need to kick me."

18. Defendant Filsinger told Plaintiff to "be quiet."

19. Defendants Lastrilla, Filsinger, Stahl, Schwandt, Wilcox, Rittner, Marcus and Scheuring were all standing within a couple of feet of Defendant Gasser when he kicked Plaintiff in the face. They each witnessed Plaintiff being kicked, had the duty and opportunity to intervene to prevent Plaintiff from being injured, yet failed to do so.

20. After Defendant Gasser kicked Plaintiff in the face, Greenfield Police Captain Michael Brunner, who was standing next to Defendant Gasser when he kicked Plaintiff, grabbed hold of Defendant Gasser and pulled him away.

21. Defendant Gasser then quickly walked back to his squad car.

22. Several officers picked Plaintiff up off of the ground. Blood poured from his nose, down his face and into his mouth. Plaintiff again said, "there was no need to kick me," and Defendant Filsinger told Plaintiff again to "be quiet."

23. Officers then placed Plaintiff in the back of a Milwaukee Police Department squad car.

4

24. Before Defendant Gasser left the scene, Defendants Lastrilla, Filsinger, Stahl, Schwandt, Wilcox, Rittner, Marcus and Scheuring congratulated him by, among other things, slapping his hand, giving him the thumbs up sign, and laughing and smiling about Gasser's attack on Plaintiff.

25. As Defendants Gasser and Wilcox drove away, one of them exclaimed, "that was the best fucking thing ever", and in a mocking tone of voice said, "why did you kick me."

26. Less than two minutes after Plaintiff was kicked and placed in the squad car, he suffered an epileptic seizure that was triggered by being kicked in the head.

27. Milwaukee police officers pulled Plaintiff out of the car, laid him on the ground, and Plaintiff suffered multiple additional seizures while on the ground, causing him to lose consciousness and his body to shake and convulse uncontrollably.

28. Plaintiff was taken by ambulance to Froedtert Hospital, where he was admitted and remained for three days, catheterized, and on a breathing tube, all as a result of Defendant Gasser's excessive use of force.

29. None of the Defendants informed medical personnel at the scene or at the hospital that Plaintiff had been kicked in the face prior to suffering a seizure.

30. Plaintiff was diagnosed with, among other things, a bilateral nasal bone fracture, provoked status epilepticus, and acute respiratory failure. Plaintiff continues to suffer from pain and limited mobility in his neck as a result of being kicked in the face.

31. In addition to his physical injuries, as a direct and proximate result of Defendant Gasser's actions, Plaintiff suffered and continues to suffer, among other things, severe emotional distress, anguish, humiliation, shame, fear, embarrassment, nightmares about the incident, and has been diagnosed with post-traumatic stress disorder.

5

32. Following the incident, Defendants Lastrilla, Filsinger, Stahl, Schwandt, Wilcox, Rittner, Marcus and Scheuring made out false and incomplete official reports and gave a false and incomplete version of events to their supervisors and to Internal Affairs Division investigators. None of them made any mention of Plaintiff being kicked in the face by Defendant Gasser, either in their reports or interviews with IAD.

**Defendant Gasser's Criminal Prosecution and Conviction**

33. Assistant Chief David Patrick and Captain Michael Brunner of the Greenfield Police Department, who were present on scene and witnessed Defendant Gasser kick Plaintiff in the face, contacted the Milwaukee Police Department Internal Affairs Division later that day to report what they observed.

34. A criminal investigation was initiated, and on September 6, 2018, Defendant Gasser was charged with misconduct in office and substantial battery, both felonies.

35. On September 7, 2018, Defendant Gasser pleaded guilty to lesser charges of misdemeanor battery and disorderly conduct, resigned from the Milwaukee Police Department, and was sentenced to 14 days in jail and 18 months of probation.

**The City of Milwaukee's Longstanding History of Police Violence and Cover-Up**

36. In 2004, several off-duty white MPD officers savagely beat and tortured an African-American man named Frank Jude.

37. The on-duty officers who came to the scene joined with the brutalizers in an attempt to cover-up the crimes.

38. During the state criminal investigation, former Milwaukee County District Attorney E. Michael McCann stated that the MPD's code of silence hampered the investigation, a frustration that was echoed by former Milwaukee Chief of Police Nannette Hegerty.

39. In 2006, when MPD officer Nicole Belmore broke the code of silence and testified against her fellow officers who beat Jude, she was retaliated against by MPD officers who called her a rat, vandalized her property, interfered with her radio communications, and refused to provide her backup.

40. The MPD did not discipline anyone for this intimidation, and one of the officers who came to the scene of the beating, an officer named Bradley Blum, later invoked the Fifth Amendment when asked about the beating and cover-up. Blum was subsequently promoted to sergeant in 2015.

41. In 2007, *The Milwaukee Journal Sentinel* broke the story that District 5 Sergeant Jason Mucha had accumulated dozens of citizen complaints.

42. Former Chief Hegerty, who had previously approved Mucha's promotion to sergeant, said Mucha was doing a "great job," and when Ed Flynn replaced Hegerty as Police Chief in 2008, he ratified the determination of the Internal Affairs Division that none of the myriad complaints against Mucha had merit.

43. Defendant Gasser was hired by the Milwaukee Police Department in 2007.

44. From 2008 to 2012, he was assigned to District 5.

45. During this time period, the District 5 Power Shift Unit, led by Sergeant Mucha, was engaged in what has come to be known as the illegal body cavity search scandal, in which disgraced former Officer Michael Vagnini performed, with the cooperation of his all white unit and other District 5 officers including Defendant Gasser, illegal strip and body cavity searches, probing the rectums and genitals of more than 70 young African-American men in search of drugs.

7

46. No officer, including Defendant Gasser, reported Officer Vagnini or any of his fellow officers for any of the illegal strip and cavity searches that they conducted.

47. In 2010, Gasser was present when Vagnini conducted an illegal body cavity search that caused the victim to bleed from his anus for several days. Gasser failed to intervene, failed to report the illegal search to his supervisors, and later testified that he did not believe there was anything wrong with the search.

48. In early 2012, as the complaints of illegal searches began to mount, the MPD and the Milwaukee County District Attorney's Office initiated an investigation that led to the charging of Vagnini and three other officers.

49. While the investigation was pending, Vagnini, Mucha and six other officers, including Defendant Gasser, were stripped of their badges and guns and placed on desk duty.

50. While Gasser was on desk duty, he made a Facebook post stating, "My first day back I will not hesitate to go right back to doing exactly what I was doing before." In the post, he also thanked his fellow officers for their support while he is off the streets and said he was confident all the targets of the investigation will be cleared.

51. Shortly before the investigation was made public, the MPD promoted Gasser to Field Training Officer, where he taught officers how to patrol and was responsible for evaluating their performance.

52. During the course of the investigation, Vagnini and the other District 5 officers, including Defendant Gasser, met repeatedly and attempted to get their stories together for their appearances before the John Doe grand jury, and to discourage cooperation at these appearances.

53. In their statements to IAD, they all claimed to have not seen any wrongdoing when accompanying Vagnini on his illegal searches.

54. Gasser's former partner, a Power Shift Unit member named Zach Thoms, who reluctantly cooperated with the investigation after being granted immunity from prosecution, was subjected to threats from Vagnini, who called him a "snitch motherfucker," and a bullet with his initials on it was placed in his police locker.

55. According to his lawyer, Thoms was "seen as a rat" by his fellow officers, and he "has no friends in the department."

56. In 2013, in exchange for his testimony against Officer Vagnini, Defendant Gasser received immunity for the role he played in illegal body cavity searches of citizens. But Gasser was an uncooperative cooperator, and refused to provide any information to the District Attorney that would assist in the prosecution of Vagnini.

57. Vagnini pleaded no contest to misconduct in public office and performing illegal strip searches and was sentenced to 26 months in prison, while the other three officers pleaded no contest to lesser charges.

58. None of the other Power Shift Unit members or other District 5 officers, including Defendant Gasser, who were involved in illegal body cavity searches, or their supervisors was disciplined by the MPD.

59. In 2014, a federal jury in Milwaukee awarded $506,000 to a man named Leo Hardy, finding that Defendant Gasser and another MPD officer violated Hardy's civil rights by subjecting him to an illegal search and wrongful arrest.

60. The City of Milwaukee and MPD failed to take any disciplinary action against Defendant Gasser following the jury verdict.

61. In this case, as alleged above, Defendant Gasser did not file a report concerning his abuse of Plaintiff, and Defendants Lastrilla, Filsinger, Stahl, Schwandt, Wilcox, Rittner,

9

Marcus, and Scheuring, who were on scene and witnessed Gasser kick Plaintiff in the face, created false and incomplete reports, and otherwise covered up for Defendant Gasser.

### Count I – 42 U.S.C. § 1983
### Fourth Amendment

62. Plaintiff repeats and realleges the foregoing paragraphs as if fully set forth herein.

63. The actions of Defendant Gasser in using excessive, unjustifiable, and unnecessary force against Plaintiff by kicking him while he was detained and subdued on the ground by other officers violated Plaintiff's Fourth Amendment right to be free from unreasonable seizures, and caused the injuries set forth above.

### Count II – 42 U.S.C. § 1983
### Failure to Intervene

64. Plaintiff repeats and realleges the foregoing paragraphs as if fully set forth herein.

65. Defendants Lastrilla, Filsinger, Stahl, Schwandt, Wilcox, Rittner, Marcus and Scheuring individually, jointly, and/or in conspiracy, had the opportunity, duty and ability to intervene on behalf of Plaintiff during Defendant Gasser's attack, but failed to do so. This failure to intervene is further evidenced by their failure to come forward and give truthful statements about Gasser's unlawful attack, and thereby caused the Fourth Amendment violation and injuries to Plaintiff as set forth above.

### Count III – 42 U.S.C. § 1983
### *Monell* Policies and Practices

66. Plaintiff repeats and realleges the foregoing paragraphs as if fully set forth herein.

67. The actions of Defendants Gasser, Lastrilla, Filsinger, Stahl, Schwandt, Wilcox, Rittner, Marcus and Scheuring were done pursuant to one or more interrelated *de facto* policies, practices and/or customs of the City of Milwaukee, its Police Department, its Fire and Police Commission, its Internal Affairs Division and/or its Police Chief.

68. At all times material to this complaint Defendant City of Milwaukee and its Police Department, Fire and Police Commission, Internal Affairs Division and/or Police Chief had interrelated *de facto* policies, practices, and customs which included, among other things, (a) the failure to properly hire, train, supervise, discipline, transfer, monitor, counsel and otherwise control police officers, particularly those who are repeatedly accused by citizens of brutality and other serious violations of constitutional rights; (b) the police code of silence; and/or (c) the encouragement of unreasonable use of force.

69. The policy, practice, and custom of a police code of silence results in police officers refusing to report instances of police misconduct of which they are aware, despite their obligation to do so, and also includes police officers either remaining silent or giving false and misleading information during official investigations in order to protect themselves or fellow officers from internal discipline, civil liability, or criminal charges, and to perjure themselves in criminal cases where they and their fellow officers have used unreasonable force against a criminal defendant.

70. The *de facto* policies, practices and customs of failing to properly hire, train, supervise, monitor, discipline, counsel and control police officers, the code of silence, and the encouragement of unreasonable use of force are interrelated and exacerbate the effects of each other to institutionalize police lying and immunize police officers from discipline.

71. Before, at the time, and after the incident giving rise to this complaint, officers of the Milwaukee Police Department, as a matter of widespread practice so prevalent as to comprise municipal policy, abused citizens in a manner similar to that alleged by Plaintiff in this Complaint on a frequent basis, yet the Milwaukee Police Department made findings of wrongdoing by officers in a disproportionately small number of cases.

72. Additionally, the involvement in, and ratification of, the unconstitutional actions of the Defendants and other officers by municipal supervisors and policymakers, as well as by a wide range of other police officials, officers, and divisions of the Department, including its Internal Affairs Division, further establishes that these acts were part of a widespread municipal policy, practice and custom. This involvement and ratification is further demonstrated, among other things, by the Department's failure to properly investigate the prior unconstitutional conduct of Defendant Gasser and other officers, or to discipline them for their unconstitutional conduct.

73. The failure to discipline and code of silence is further evidenced by the Defendants' failure to come forward to report Gasser's misconduct, lying in their official reports and IAD interviews about Gasser's attack on Plaintiff, and by the City of Milwaukee's failure to discipline the Defendants for these falsehoods.

74. The aforementioned policies, practices and/or customs of failing to hire, train, supervise, monitor, discipline, counsel and control police officers, the police code of silence, and the encouragement of unreasonable use of force, separately and together, proximately caused injury to the Plaintiff in this case, *inter alia*, because Defendants had good reason to believe that their misconduct would not be revealed or reported by fellow officers or their supervisors, that these denials would go unchallenged by these supervisors and fellow officers, from the Police Chief, Fire and Police Commission, on down, and that they were effectively immune from disciplinary action, thereby protecting them from the consequences of their unconstitutional conduct.

75. But for the belief that they would be protected, both by fellow officers and by the

Department, from serious career and criminal consequences, Defendants would not have engaged in the conduct that resulted in the injuries to Plaintiff.

76. Said interrelated policies, practices and customs, as set forth above, both individually and together, were maintained and implemented with deliberate indifference, and encouraged Defendants to commit the aforesaid acts against Plaintiff and therefore acted as the moving force and were, separately and together, direct and proximate causes of said constitutional violations, and injuries to Plaintiff.

### Count IV – State Law Claim
### Battery

77. Plaintiff repeats and realleges the foregoing paragraphs as if fully set forth herein.

78. Plaintiff timely filed and served a Notice of Injury and Claim for Monetary damages, pursuant to Wis. Stat. § 893.80, with Defendant City of Milwaukee, and the Milwaukee Police Department on November 29, 2017.

79. The Notice of Claim was deemed denied by operation of law after allowing 120 days to elapse without receiving a formal and express disallowance of the Claim.

80. The actions of Defendant Gasser constituted the tort of battery under Wisconsin state law and caused the injuries set forth above.

### Count V – State Law Claim
### Intentional Infliction of Emotional Distress

81. Plaintiff repeats and realleges the foregoing paragraphs as if fully set forth herein.

82. In committing the acts alleged above, Defendant Gasser intended to cause Plaintiff emotional distress.

83. In doing so, Defendant Gasser's conduct was extreme and outrageous and caused Plaintiff severe, disabling emotional distress.

84. The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

85. As a result of this misconduct, Plaintiff sustained injuries, including emotional pain and suffering, as is more fully alleged above.

## Count VI – State Law Claim
*Respondeat Superior*

86. Plaintiff repeats and realleges the foregoing paragraphs as if fully set forth herein.

87. In committing the acts alleged in Counts IV and V, Defendant Gasser was a member and agent of the City of Milwaukee, acting at all relevant times within the scope of his employment.

88. Defendant City of Milwaukee is therefore liable for the acts of Defendant Gasser which violated state law under the doctrine of *respondeat superior*.

## Count VII – State Law Claim
**Indemnification**

89. Plaintiff repeats and realleges the foregoing paragraphs as if fully set forth herein.

90. Wisconsin law, Wis. Stat. § 895.46, requires public entities to pay any tort judgment for damages for which employees are liable for acts within the scope of their employment.

91. At all times relevant to this action, Defendants Gasser, Lastrilla, Filsinger, Stahl, Schwandt, Wilcox, Rittner, Marcus and Scheuring committed the acts alleged above in the scope of their employment with Defendant City of Milwaukee.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Rafael Rosales, asks that this Court enter judgment in his favor and against Defendants City of Milwaukee, former Milwaukee Police Department Officer

Michael Gasser, Milwaukee Police Department Officers Kim Lastrilla, James Filsinger, Adam Stahl, Michael Schwandt, Damon Wilcox, Matthew Rittner, Thomas Marcus and Joseph Scheuring, awarding compensatory and punitive damages, attorneys' fees, and costs against them, as well as any other relief this Court deems appropriate.

## JURY DEMAND

Plaintiff Rafael Rosales demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all issues so triable.

Dated: January 24, 2019  Respectfully submitted,

s/ Ben H. Elson
Ben H. Elson, IL Bar #6286106
G. Flint Taylor, IL Bar #2802058
Christian Snow, IL Bar #6330474
PEOPLE'S LAW OFFICE
1180 N. Milwaukee Ave.
Chicago, IL  60642
(773) 235-0070
ben.elson79@gmail.com

Robin Shellow, #1006052
THE SHELLOW GROUP
324 West Vine Street
Milwaukee, WI  53212
(414) 263-4488
tsg@theshellowgroup.com

Attorneys for Plaintiff

15